## HAYES v. ORR.

*(Circuit Court, N. D. New York. September 4, 1891.)*

CONTRACT OF SALE—ALTERATION AND MODIFICATION—EVIDENCE.

W. contracted with the cashier of a bank to purchase certain mills, and was allowed to overdraw his account for the purpose of making improvements. Afterwards it was proposed to take defendant into partnership, and give him a one-third interest in the property. Defendant and W. accordingly met at the bank, and, after a consultation with the cashier, agreed that when the partnership was formed a one-third interest should be sold to defendant for $7,000, payable $3,500 in cash, and the balance as should be "agreed by the parties in interest." There was testimony that the instrument, which was left with the cashier, was left with him merely as a depositary, and other testimony that it was left as collateral for W.'s obligations. When the partnership was formed, the cashier suggested that defendant advance $3,000 to the partnership, instead of paying $3,500 on the contract: saying to him that there was danger of losing his money if he applied it on the contract; that W. was largely indebted to the bank; and that without this money the enterprise would fail. Afterwards the partners again met at the bank, and the cashier prepared two instruments in modification of the original contract between him and W. The first was an assignment of that contract by W. to the partnership; the second, a contract between the cashier and the partners, substituting the latter for W. The cashier also executed to the bank an assignment of the contract as modified. Nothing was said about the first contract, and it was subsequently found among the cashier's papers. Afterwards an action was brought to obtain an adjudication that the legal title was in the bank, subject to the equitable rights of the parties under the second contract. *Held,* that the second contract was intended as the complete and exclusive agreement between the parties.

At Law. Action to recover money due on a contract for the purchase of land. The case was tried without a jury, by stipulation of the par-

ties, and the court ordered judgment for the defendant, with leave for plaintiff to move for a new trial.     Motion denied.

*Theo. Bacon,* for plaintiff.

*Lyons & Pierce,* for defendant.

WALLACE, J.     This action is at law, to recover money alleged to be due upon a contract made by the defendant with Richard L. Whiting, dated February 23, 1886, for the purchase of real estate.     It is the theory of the plaintiff that the contract was delivered by the parties to it to Charles O'Brien, who was the cashier of the First National Bank of Auburn, with the intention that the money payable by the contract should belong to him.     The bank failed in January, 1888, and the plaintiff was appointed its receiver.     O'Brien was only nominally interested in the transactions in controversy.     He was the cashier of the bank, and represented it in all which took place.     The case was tried without a jury, by the stipulation of the parties, and the court ordered judgment for the defendant, with leave for the plaintiff to move for a new trial.     The plaintiff has moved for a new trial, and the case is now here upon that motion.     The evidence has been thoroughly reviewed, and the rulings of the trial reconsidered, and the conclusion is that a proper disposition of the case was made in ordering judgment for the defendant.

The case turns wholly upon questions of fact; these being whether the contract sued upon had been abandoned and a new one substituted in its place by the parties to it, and whether it was delivered to O'Brien upon an express or implied understanding that the money payable under it was to belong to the bank.     The facts are these:     Prior to February 23, 1886, Whiting had contracted to purchase of O'Brien, for $13,000, the real estate known as the "Troupsville Mills."     The mills had been operated by one Neyhart, and mortgaged by him to the bank.     The bank had foreclosed, and the property had been bought by O'Brien for the bank at the sale.     Whiting had paid $1,000 upon the contract, had taken possession and carried on the mills, had kept an account at the bank, had been allowed to overdraw his account, had expended about $12,000 in improvements, of which about $10,000 were the proceeds of his overdrafts.     Whiting, his son, and the defendant had proposed to become partners and carry on the mills; and as part of the arrangement the defendant was to have a one-third interest in the property.     The property was not worth what it had cost, and was rapidly depreciating.     On February 23, 1886, Whiting and the defendant met O'Brien at the bank, and, after consultation with him, and in his presence, entered into the contract upon which the suit is founded.     It recited that Whiting held the property by contract with O'Brien.     It was conditioned for the sale of a one-third interest in the property to the defendant for the sum of $7,000; that when the copartnership between Whiting, his son, and the defendant should be formed, Whiting should convey the one-third interest to the defendant; that the defendant should then pay $3,500, and that the defendant should pay the balance as should be "agreed by the parties in interest when conveyance was made."

After executing the instrument, the parties to it left it with O'Brien. There is testimony indicating that it was left with him merely as a depositary, and other testimony that it was left with him to hold as a collateral for Whiting's obligations. The reasonable conclusion is that all the parties regarded him as the real owner of the property, having a claim against it of more than its value for the unpaid purchase money and the money of the bank expended in improvements. May 24, 1886, the copartnership was formed, took possession, and thenceforth carried on the mills. The defendant did not make the payment of $3,500, but, instead of doing so, at the suggestion of O'Brien, he advanced $3,000 to the copartnership. O'Brien told him there was danger of losing his money if he applied it on the contract; that Whiting was largely indebted to the bank; that the firm would have no capital; and that without this money the enterprise would be a failure. The $3,000 thus advanced by the defendant constituted all his resources, except $1,000, and this fact was known to O'Brien and Whiting. October 21, 1886, the two Whitings and the defendant met O'Brien at the bank, and O'Brien prepared two instruments in modification of the original contract between Whiting and himself, and the same were executed. The first was an assignment by Whiting of his contract with O'Brien to himself, his son, and the defendant, "to be held and enjoyed by them, share and share alike." The second was a contract between O'Brien, though not signed by him, the defendant, Whiting, and Whiting's son, by which, in effect, the latter were substituted in the place of Whiting in his contract with O'Brien. By the new contract, Whiting, his son, and the defendant covenanted with O'Brien to pay him $12,000 for the real estate, with interest; and they were to receive a deed from him upon paying $4,000 by May 1, 1890, and were to give him a bond and mortgage to secure the balance of the purchase money. Nothing was said at this interview about the contract between Whiting and the defendant. On the same day O'Brien prepared and executed an assignment to the bank of his contract with Whiting, reciting that it was assigned with the modifications that day made between himself, the two Whitings, and the defendant.

So far as appears, the subject of the contract between Whiting and the defendant was never mentioned between them, or by O'Brien, after the occasion on which the latter advised the defendant not to apply his money upon it. After the bank failed, and O'Brien had disappeared, an action was brought in behalf of the bank by the present plaintiff against the two Whitings, the defendant, and against O'Brien and his wife, to obtain an adjudication that the legal title to the real estate was in the bank, subject to the equitable rights of the two Whitings and the defendant under the contract between them and O'Brien of October 21, 1886. A decree was entered in that action, adjudging the legal title to be in the bank, and that the two Whitings and the defendant were entitled to a conveyance upon performance of the contract between them and O'Brien of October 21, 1886. The contract between Whiting and the defendant seems to have been found among O'Brien's pa-

pers after the bank failed. Manifestly the present suit is the assertion of a claim against the defendant which O'Brien never intended to assert. Doubtless he hoped, when the defendant contracted with Whiting to pay $7,000 for a third interest in the property, to realize out of it ultimately $21,000, or that sum approximately. But when he subsequently became satisfied that the defendant would not be able to fulfill unless the profits of the business would enable him to do so, and that the business would collapse, and the property fall back upon his hands, unless the defendant's money was used in the business, he advised the defendant not to pay the money on the contract, but put it in the business. He probably thought that, if the business could be put on a successful footing, the property would appreciate, or at least that its depreciation would be stayed, and he would ultimately get more for it from Whiting and the defendant than he could from any one else. After the lapse of eight months he probably saw that his original expectations were not likely to be realized. It does not appear what the property was worth in October, 1886. It may have continued to depreciate, as it had in the past; possibly had depreciated more rapidly. At all events, he had entertained negotiations with Neyhart to sell it to him at from $16,000 to $18,000. It does not appear whether Neyhart had any means, or that his financial circumstances had changed since the time when he was unable to make his payments upon the mortgage to the bank and had suffered a foreclosure. It is fair to infer that the negotiations with him contemplated that he was to try the experiment again of operating the mills and attempting to pay for the property out of the business, if he could. Certainly it is utterly unreasonable to suppose that O'Brien expected the defendant to pay him $7,000 under the contract in suit, and $4,000 under the contract of October 21, 1886, for a one-third interest in the property; and it is manifest that when the last contract was made O'Brien intended to terminate his connection with the property definitely, and substitute the bank in his place. This is shown by his assignment of the contract made on that day to the bank. If he regarded the contract in the suit as still in force, why did he not assign that to the bank also; or why did he not provide in the new contract for the transfer to Whiting and Whiting's son of a two-thirds interest in the property upon paying their proportion of the purchase money? Upon all the facts it seems reasonable to conclude that he had become satisfied that the two Whitings and the defendant could not afford to pay more than $12,000 for the property, and that it was better to sell it to them for that price, and have it sold permanently, than to experiment with Neyhart, or take the chance of finding some other purchaser at a better price. The circumstances are more consistent with the theory that the later contract was intended as the complete and exclusive agreement between the parties than with any other of which the case is capable. Motion for a new trial is denied.